# UNITED STATES DISTRICT COURT
# SOUTHERN DISTRICT OF FLORIDA

Case No. 1:22-cv-22645-KMM

NIMBUS BOAT RENTAL, CORP., *et al.*,

    Plaintiffs,

v.

ANGEL GARCEL, *et al.*,

    Defendants.

_____ /

## REPORT AND RECOMMENDATIONS

**THIS CAUSE** is before the Court upon Defendants' request to vacate the arrest of the F/V *Nirvana*, a 105-foot[1] Rodman bearing Hull No. DLZ13852I512 (the "Vessel"). The matter was referred to the undersigned by the Honorable K. Michael Moore, United States District Judge, pursuant to 28 U.S.C. § 636 and the Magistrate Judge Rules of the Local Rules of the Southern District of Florida, to take all necessary and proper action as required by law with respect to any post-arrest hearing under Supplemental Rules C(3) and E(4)(f).[2] (ECF No. 14). The Court entered an Order requiring Plaintiffs to show cause in writing why, among other topics, the arrest of the Vessel should not be vacated. (ECF No. 27). Plaintiffs filed a Response ("Response") (ECF No. 28). The Court also set an evidentiary hearing to show cause on September 19, 2022, which continued on September 20, 2022, and September 27, 2022 (ECF Nos. 47, 50, 63). Having reviewed the Response, the record as a whole, and with the benefit of the evidence and argument

---

[1] The Certificate of Title attached to Plaintiffs' Verified Complaint identifies the *Nirvana* as a 98-foot, 4-inch Rodman (ECF No. 1-1). The Parties acknowledged this difference and agreed it is the same vessel.

[2] Plaintiffs' Emergency Hearing Request (ECF No. 9), which was also referred to the undersigned, was denied as moot upon the issuance of the Warrant of Arrest *In Rem*. (ECF No. 24).

1

presented at the Show Cause Hearings, the undersigned respectfully **RECOMMENDS** that Defendants' request to vacate the arrest of the F/V *Nirvana* be **GRANTED**.

## I. BACKGROUND

This is an action involving title to the F/V *Nirvana*, arising under the Court's admiralty and maritime jurisdiction, pursuant to 28 U.S.C. § 1333 and Rule 9(h) of the Federal Rules of Civil Procedure, with state law claims arising under the Court's supplemental jurisdiction, pursuant to 28 U.S.C. § 1367.

### A. The Verified Complaint

Plaintiffs Nimbus Boat Rental Corp. ("Nimbus"), Cristian Valdes ("Valdes"), and Elaine Leyva ("Leyva") (collectively, "Plaintiffs") allege that Defendants Angel Garcel ("Garcel") and his company Jet Skis in Miami, Corp. ("Jet Skis") (collectively, "Defendants") have unlawfully deprived Plaintiffs of possession and title to the Vessel without consent and have failed to return the Vessel upon demand. According to Plaintiffs' Verified Complaint ("Complaint") (ECF No.1), the individual Parties in this action (Valdes, Leyva, and Garcel) became friends through mutual familial relationships. Plaintiffs contend that Garcel sought out this friendship with Valdes's reputation as a successful entrepreneur in the music and entertainment industry in mind, all with the targeted goal of gaining Valdes's trust and confidence.

The Complaint describes Garcel as the sole principal of Jet Skis, which sells and rents personal marine watercraft and other marine vessels. Plaintiffs allege that, after gaining Valdes and Leyva's trust, Garcel approached them with a business opportunity: Garcel proposed that Valdes and Leyva purchase the Vessel, with Valdes, Leyva, Garcel, and Jet Skis to manage the Vessel, provide necessary repairs and maintenance, and make it seaworthy, so that they could

charter the Vessel. Garcel further offered that he and Jet Skis would manage the Vessel in exchange for a fee.

When Valdes, Leyva, and a prospective business partner attended a preliminary inspection of the Vessel, they did not believe that it was worth the requested purchase price. Their bid of $450,000.00 to purchase the Vessel was rejected. According to Plaintiffs, Garcel became frustrated with the low value of their bid and attempted to cause a rift between Valdes and Leyva and their prospective business partner. To persuade Valdes and Leyva to purchase the Vessel, Garcel told them that he and Jet Skis would invest half the funds necessary to purchase the Vessel, becoming Valdes and Leyva's business partner. Under the proposed arrangement, Garcel would be responsible for equipping the Vessel, ensuring it was seaworthy and compliant, and managing aspects of the charter business. Based on Garcel's representations, Valdes and Leyva agreed.

However, Plaintiffs allege that Garcel never had the economic means to purchase his half of the Vessel. Rather, Plaintiffs contend that Garcel's promise to pay half the purchase price for the Vessel was false and was made to induce Valdes and Leyva to proceed with the purchase. Leading up to the close of the sale of the Vessel, Garcel informed Valdes and Leyva that he and Jet Skis did not have the funds to purchase their share of the Vessel, and instead suggested that Valdes and Leyva advance all the funds for the purchase. According to the Complaint, Valdes and Leyva did, advancing $635,000.00 for the purchase, furnishing, and equipping of the Vessel. In return, Garcel, Valdes, and Leyva agreed that Leyva would become an officer and shareholder of Jet Skis, conditioned upon Garcel and Jet Skis investing half of the funds for the acquisition and restoration of the Vessel. Jet Skis would conduct the charter business for the Vessel.

At closing, Garcel advised Valdes and Leyva that he would coordinate the registration paperwork for the Vessel. Valdes and Leyva agreed due to their lack of experience with maritime

transactions. According to the Complaint, Garcel registered the Vessel in the name of Jet Skis.

Because the Vessel was in poor condition, Leyva and Valdes invested additional funds for its repair and upkeep. They asked Garcel to become the project manager for the refurbishment of the Vessel, with Garcel and Jet Skis earning a percentage of the charter business's net profits in exchange for Garcel's work. According to the Complaint, Garcel performed poorly in this role, ultimately destroying Plaintiffs' trust in Garcel. Determined to sell the Vessel, Leyva and Valdes requested that Garcel deliver the title and ownership papers to them. Garcel and Jet Skis refused, and instead lobbied for half of the net proceeds from the sale of the Vessel. Garcel and Jet Skis's request was rejected. Plaintiffs contend that Garcel held the Vessel's ownership papers hostage. Ultimately, Garcel capitulated, signing a Certificate of Title transferring ownership of the Vessel; Valdes and Leyva subsequently registered the Vessel in the name of Nimbus on May 2, 2022.

According to the Complaint, Garcel became frustrated and disgruntled. Plaintiffs allege that he falsely reported to law enforcement that Valdes had broken into Garcel and Jet Skis's offices and had stolen the Vessel's ownership documents, forged a signature to effectuate the transfer of the Vessel, and unlawfully registered the Vessel in the name of Nimbus. In reliance on Garcel's allegedly false report, law enforcement determined there was probable cause to arrest and prosecute Valdes. On June 22, 2022, Valdes was arrested. Ultimately, state prosecutors declined to prosecute, dismissing the charges on July 22, 2022, because the information Garcel provided to them had proved too inconsistent, inaccurate, and unreliable.

Plaintiffs contended that Garcel remained in possession of the Vessel and continued to charter it without Valdes and Leyva's consent, and in violation of various U.S. Coast Guard regulations. Plaintiffs asserted that Garcel has not accounted for any of the funds generated from chartering the Vessel, and that he surreptitiously uses third parties to seek out charters.

Accordingly, Plaintiffs commenced this action against Defendants in this Court on August 19, 2022. Plaintiffs assert eight causes of action against Defendants: (1) an *in rem* claim for the arrest of the Vessel; and *in personam* claims for (2) conversion; (3) imposition of a constructive trust; (4) unjust enrichment; (5) an accounting; (6) malicious prosecution; (7) intentional infliction of emotional distress; and (8) abuse of process. In their *in rem* claim for the arrest of the Vessel, Plaintiffs request that "Plaintiff Nimbus be decreed the rightfully titled owner of the vessel." (Complaint at 15).

Upon filing the Complaint, Plaintiffs also filed a Verified Motion for Issuance of a Warrant of Arrest and/or Summons (ECF No. 8) and an Emergency Hearing Request (ECF No. 9) as to that motion, with a certificate of emergency based on exigent circumstances, pursuant to Local Admiralty Rule C(2)(b). As a result, on August 22, 2022, the district court entered an Order directing the Clerk of Court to issue a warrant of arrest *in rem* against the Vessel (ECF No. 11), pursuant to Supplemental Rule C and Local Admiralty Rule C(2)(b), which issued and was executed on August 23, 2022 (ECF No. 17, 26).

On September 1, 2022, Defendants timely filed their Verified Statement of Right or Interest in a 2005 105' Rodman, Hull Identification Number DLZ138521512 and incorporated Motion for Order to Show Cause (ECF No. 25) (the "Claim"), pursuant to Supplemental Rule C(6)(a)(i) and Local Admiralty Rule C(6)(a). (ECF No. 25). Defendants' Claim asserts that Plaintiffs (1) fabricated the emergency that led to the issuance of the Warrant of Arrest *In Rem*, (2) provided the Court with recalled title for the Vessel, and (3) failed to disclose the existence of a prior state court action involving the same issues here. Although the adjudication of Defendants' Claim is not the subject of the instant proceeding, the Claim incorporated a motion for order to show cause.

On September 7, 2022, the request was granted, and the Court entered an Order requiring

5

Plaintiffs to show cause in writing (1) why the arrest of the Vessel should not be vacated, (2) why exigent circumstances existed requiring the issuance of the Warrant of Arrest *In Rem* (ECF No. 17), and (3) why the Court should not award attorney's fees, costs, and expenses incurred by Defendants owing to the arrest of the Vessel.  (ECF No. 27).  The matter was also set for an evidentiary hearing to show cause, which was held on September 19, 2022, and continued on September 20, 2022, and September 27, 2022.

### B. Plaintiffs' Response to the Court's Order to Show Cause

Plaintiffs oppose vacating the arrest and releasing the Vessel.

First, Plaintiffs reiterate in their Response that Defendants' claim of ownership to the Vessel is unlawful.  Plaintiffs point the Court to their sworn statements and allegations in the Complaint that: (1) they are the rightful owners of the Vessel; (2) they advanced the funds to purchase and restore the Vessel; (3) Garcel falsely reported a crime with the goal of having Valdes arrested; (4) Garcel voluntarily transferred title of the Vessel; and (5) Garcel is exploiting the Vessel for personal gain while disregarding safety, regulatory, and insurance concerns.  Plaintiffs assert that these circumstances provide reasonable grounds and probable cause "to believe that Garcel would continue in his campaign to retain unlawful possession of the Nirvana, exploit her through an illegal passenger charter operation; placing her, its true owners and unsuspecting passengers in danger."  (Response at 7).

Plaintiffs further assert in their Response that Defendants have fabricated evidence to misrepresent the ownership of the Vessel.  According to Plaintiffs' Response, Garcel personally and voluntarily signed a Certificate of Title and other documentation that transferred ownership of the Vessel on April 30, 2022, as corroborated by business records and video footage.  Plaintiffs represent that they registered the Vessel with the State of Florida and obtained a certificate of title

for the Vessel in the name of Nimbus, and then listed the Vessel for sale, on May 20, 2022. Plaintiffs contend that, out of frustration, Garcel then falsely reported to law enforcement how Valdes acquired title to the Vessel, withholding that he voluntarily transferred title on April 30, 2022. According to Plaintiffs, Garcel then obtained possession of the Vessel when law enforcement took the keys from Valdes at the time of his arrest, thereafter fraudulently procuring a duplicate title. It is Plaintiffs' position that Garcel's various inconsistent versions of events led prosecutors to dismiss the charges against Valdes.

Second, Plaintiffs assert that exigent circumstances existed for the arrest of the Vessel. They pose that Garcel, who is not a licensed boat captain, has placed the Vessel and unsuspecting passengers in peril through illegal charter operations, from the date of Valdes's arrest, on June 22, 2022, to the date of the arrest of the Vessel, on August 23, 2022. Plaintiffs represent that Defendants' charter operations violate U.S. Coast Guard regulations regarding passenger counts. They assert that passengers have been "instructed on what to say and do in order to circumvent the regulatory and legal framework prohibiting illegal charters." (Response at 14).

Further, Plaintiffs contend that Defendants have operated the Vessel without concern for its upkeep and maintenance. According to Plaintiffs, the substitute custodian for the Vessel opined after the Vessel's arrest that the Vessel's electric, lighting, exhaust, fuel, engine, and life safety systems were compromised. Moreover, Plaintiffs represent that Defendant was threatening to sell or damage the Vessel. They point to general representations Defendant made to others in the local captain and marine community that Defendant was intent on selling, damaging, or sinking the Vessel. According to Plaintiffs, the substitute custodian for the Vessel found 150 gallons of fuel spilled in the engine room of the Vessel, not in connection with any fuel leak.

To this end, Plaintiffs argue their sworn declarations and the Verified Complaint are

sufficient at this stage to establish that they are the rightful owners of the Vessel, that Garcel's duplicate title is fraudulent, and that they have otherwise set forth a prima facie case that Defendants have wrongfully deprived them of possession of the Vessel.

## II. LEGAL STANDARD

"A suit to try title to or possession of a ship wrongfully taken has long been considered within the jurisdiction of admiralty courts regardless of whether the claim to the ship is based on the breach of a maritime contract or the commission of a maritime tort." *Hunt v. A Cargo of Petroleum Prod. Laden on Steam Tanker Hilda*, 378 F. Supp. 701, 703 (E.D. Pa. 1974); *see also Libbey v. Kosterlitz*, No. 2:18-CV-466-FTM-29CM, 2018 WL 5617133, at *2 (M.D. Fla. Oct. 30, 2018) ("Suits to try title, known as petitory actions, are 'suits in which it is sought to try the title to a ship independently of any possession of the vessel.' In contrast, possessory actions are 'actions to recover vessels or other property to which an owner, seaman or lienor is of right entitled.'" (quoting *Thypin Steel Co. v. Asoma Corp.*, 215 F.3d 273, 282 n.7 (2d Cir. 2000)).

In an action for the possession of a vessel or to try title to the vessel, Supplemental Rule D of the Federal Rules of Civil Procedure provides that "the process shall be by a warrant of arrest of the vessel, cargo, or other property, and by notice in the manner provided by Rule B(2) to the adverse party or parties." Fed. R. Civ. P. Supp. R. D. The "ability to arrest and detain a defendant vessel constitutes the only effective means of pursuing a maritime action in rem." *Coastal Barge Corp. v. M/V Mar. Prosperity*, 901 F. Supp. 325, 327–28 (M.D. Fla. 1994)).

Then, "following the arrest of a vessel, the owner or other person claiming a right to the vessel may, pursuant to Supplemental Admiralty Rule E(4)(f), seek for the court to conduct a hearing and ultimately vacate the arrest." *W. Coast Fiberglass Specialist LLC v. Krebs*, No. 2:20-CV-879-JLB-MRM, 2021 WL 1342385, at *3 (M.D. Fla. Feb. 18, 2021), *report and*

8

*recommendation adopted*, No. 2:20-CV-879-JLB-MRM, 2021 WL 1338892 (M.D. Fla. Apr. 9, 2021). Supplemental Rule E(4)(f) affords a claimant to an arrested vessel the right to a "prompt hearing at which the plaintiff shall be required to show why the arrest or attachment should not be vacated[.]" Fed. R. Civ. P. Supp. R. E(4)(f). "The function of the expedited postarrest hearing is to afford due process to the shipowner whose vessel has been arrested without a prearrest hearing." *Steele v. Sailing Vessel "Polaris"*, 508 F. Supp. 3d 1, 6 (D. Md. 2020).

"While the details of a post-attachment hearing are left to the Court's discretion, the 'post-arrest hearing is not intended to definitely resolve the dispute between the parties, but only to make a preliminary determination whether there were reasonable grounds for issuing the arrest warrant[.]'" *20th Century Fox Film Corp. v. M.V. Ship Agencies, Inc.*, 992 F. Supp. 1423, 1427 (M.D. Fla. 1997) (quoting *Salazar v. Atlantic Sun*, 881 F.2d 73, 79–80 (3rd Cir. 1989)); *see also James v. M/V EAGLE EXP.*, No. CA 12-423-MJ-C, 2012 WL 3068791, at *3 (S.D. Ala. July 27, 2012) ("Nor should the court conduct a mini-trial at this stage of the case."). The burden is on the plaintiff to "come forward with sufficient evidence to show there was probable cause for the arrest or attachment of the vessel." *20th Century Fox Film*, 992 F. Supp. at 1427; *see also* S.D. Fla. Local Admiralty Rule C(7); Advisory Notes to S.D. Fla. Local Admiralty Rule C(2) ("Under this rule, the claimant or intervenor may petition the Court to order the plaintiff to establish probable cause for the arrest of the property.").

"Probable cause exists when there is '[a] reasonable belief in the existence of facts on which a claim is based and in the legal validity of the claim itself.'" *Anderson v. M/Y Dream*, No. 21-60863-CIV, 2021 WL 2435455, at *2 (S.D. Fla. May 12, 2021). "In essence, plaintiff need only establish a 'prima facie' case—one that is 'based on what seems to be true on first examination, even though it [may] later be proved to be untrue.'" *Jaffe v. M/S BREAKING WIND*,

No. 17-60108-CIV, 2017 WL 7731867, at *4 (S.D. Fla. June 13, 2017) (alteration in original), *report and recommendation adopted*, No. 17-60108-CIV, 2017 WL 7732306 (S.D. Fla. June 28, 2017).

Moreover, where a warrant of arrest is issued under Supplemental Rule C(3)(a)(ii), as here, "[t]he plaintiff has the burden in any post-arrest hearing under Rule E(4)(f) to show that exigent circumstances existed," in addition to probable cause. Fed. R. Civ. P. Supp. R. C(3)(a)(ii); *see also* S.D. Fla. Local Admiralty Rule C(7).

### III. DISCUSSION

I recommend that the Warrant of Arrest *In Rem* be vacated for three reasons. First, the warrant is deficient because this action is functionally brought under Supplemental Rule D but Plaintiffs have, at all stages of briefing and at the evidentiary hearings, represented that this is an action under Supplemental Rule C. Second, having circumvented judicial review for the issuance of a warrant under Supplemental Rule C, Plaintiffs fail to establish that exigent circumstances actually existed. Third, recognizing that this action is functionally brought under Supplemental Rule D, I find that the evidence Plaintiffs put forward to establish their claim of ownership and right to title fails to establish a prima facie case that they have been wrongfully deprived of the Vessel and title thereto.

#### A. The Applicable Admiralty Supplemental Rule

First, Plaintiffs appear to have requested the warrant at issue under the wrong Supplemental Rule. I must first determine whether, in this counseled action, Plaintiffs proceed under Supplemental Rule C or Supplemental Rule D. Presumably, Plaintiffs believed that this action was brought pursuant to either or both of Supplemental Rules B and C: The proposed order attached to the Verified Motion for Issuance of a Warrant of Arrest and/or Summons (ECF No. 8)

requests process of attachment and cites Supplemental Rule B(1) and Local Admiralty Rule C(2). The proposed warrant of arrest *in rem* attached to the motion cites Supplemental Rule C. The Emergency Hearing Request (ECF No. 9) cites to Supplemental Rule C(3) and certifies exigent circumstances under Local Admiralty Rule C(2)(b). Moreover, when the Court questioned Plaintiffs at the September 27, 2022 Show Cause Hearing regarding the Supplemental Rule this action is proceeding under, counsel confirmed that this is a maritime action brought pursuant to Supplemental Rule C.

However, actions brought under Supplemental Rule C relate, generally, to the enforcement of maritime liens. *See* Fed. R. Civ. P. Supp. R. C(1)(a) ("An action in rem may be brought: (a) to enforce any maritime lien[.]"). I observe that, in their Verified Motion for Issuance of a Warrant of Arrest and/or Summons (ECF No. 8), Plaintiffs cite to 46 U.S.C. § 31301 as providing admiralty jurisdiction; that section provides definitions for the Ship Mortgage Act, 46 U.S.C. § 31301 *et seq.* Presumably, Plaintiffs believe they have a maritime lien or an enforceable ship mortgage, but their Verified Complaint indicates otherwise: Plaintiffs do not bring this action to enforce a maritime lien. Nor have they explained how they hold a maritime lien, if one does exist. Rather, Count I of the Verified Complaint is an *in rem* claim against the Vessel requesting that "Plaintiff Nimbus be decreed the rightfully titled owner of the vessel." (Complaint at 15).

Notwithstanding counsel's representation advanced at the hearing and the disconnect between the allegations and request for relief in the Verified Complaint on the one hand, and Plaintiffs' filings and representations on the other hand, this action is best construed as, in substance, proceeding under Supplemental Rule D, which governs "actions for possession, partition, and to try title . . . with respect to a vessel." Fed. R. Civ. P. Supp. R. D; *see also Santiago v. Evans*, No. 6:12-CV-577-ORL-22, 2012 WL 3231025, at *7 (M.D. Fla. June 21, 2012), *report*

11

*and recommendation adopted*, No. 6:12-CV-577-ORL-22, 2012 WL 3231016 (M.D. Fla. Aug. 6, 2012), *aff'd*, 547 F. App'x 923 (11th Cir. 2013).  Indeed, Plaintiffs have represented in various filings that they were wrongfully dispossessed as true owners of the Vessel.  *See Silver v. Sloop Silver Cloud*, 259 F. Supp. 187, 191 (S.D.N.Y. 1966) (noting that a possessory action is brought "to *reinstate* an owner of a vessel who alleges wrongful deprivation of property").  And in their response to the Court's Order to Show Cause, they rely heavily on *George v. A 2005 DONZI Motor Yacht, Hull Identification No. DNAFA008A505*, a case that was expressly brought under Supplemental Rule D.  *See* No. 09-81145-CIV-VITUNAC, 2009 WL 3417707, at *1 (S.D. Fla. Oct. 22, 2009).

However, to the extent Plaintiffs continue to insist this action is brought pursuant to Supplemental Rule C, as they did at the Show Cause Hearing, they have not explained how they hold a valid maritime lien against the Vessel.  To that end, the Warrant of Arrest *In Rem* must be vacated to the extent it was issued, at Plaintiffs' request, under Supplemental Rule C.

      **B.**    **The Existence of Exigent Circumstances**

Second, the Warrant of Arrest *In Rem* must be vacated because, having been issued under Supplemental Rule C pursuant to a certification of exigent circumstances, Plaintiffs have failed to establish that exigent circumstances actually existed.  As noted above, when a warrant of arrest *in rem* is issued under Supplemental Rule C(3)(a)(ii), as was the case here upon Plaintiffs' certification, "[t]he plaintiff has the burden in any post-arrest hearing under Rule E(4)(f) to show that exigent circumstances existed." Fed. R. Civ. P. Supp. R. C(3)(a)(ii); *see also* S.D. Fla. Local Admiralty Rule C(7).  The Advisory Committee Notes for the 1985 Amendment to Supplemental Rule C(3) explain that the Rule "recognizes that in some situations, such as when a judge is unavailable and the vessel is about to depart from the jurisdiction, it will be impracticable, if not

impossible, to secure the judicial review contemplated by Rule C(3)." Fed. R. Civ. P. Supp. R. C(3) Advisory Committee Notes to 1985 Amendment.  The Advisory Committee Notes further explain:

> When "exigent circumstances" exist, the rule enables the plaintiff to secure the issuance of the summons and warrant of arrest, subject to a later showing that the necessary circumstances actually existed.  This provision is intended to provide a safety valve without undermining the requirement of pre-arrest scrutiny.  Thus, *every effort to secure judicial review, including conducting a hearing by telephone, should be pursued before invoking the exigent-circumstances procedure*.

Fed. R. Civ. P. Supp. R. C(3) Advisory Committee Notes to 1985 Amendment (emphasis added). A plaintiff in a maritime *in rem* action should rely on the provisions that mandate the Clerk to issue a warrant of arrest *in rem* only "as an absolute last resort." *See Ms Adele Schifffahrtsgesellschaft mbH & Co. KG v. Wonderland Int'l Corp.*, No. 10-20963-CIV, 2010 WL 8932403, at *2 (S.D. Fla. Apr. 12, 2010) (finding that exigent circumstances did not exist for the issuance of a warrant of arrest without prior judicial review where the plaintiff learned on a Thursday that the vessel would arrive and depart that Sunday: the complaint was filed on Friday, and the plaintiff assumed that judicial review would be impracticable even though the court granted the plaintiff's motion to appoint a substitute custodian that Saturday).

Relying on Plaintiffs' counsel's certification of exigent circumstances in Plaintiffs' Emergency Hearing Request, the district court instructed the Clerk of Court to issue the Warrant of Arrest *In Rem*.  Accordingly, Plaintiffs were ordered to show why exigent circumstances existed.  However, it is clear that exigent circumstances did not exist at the time the Warrant of Arrest *In Rem* was requested.  Plaintiffs' response to the Court's Order to Show Cause travels on allegations that Defendants (1) have been using the Vessel to operate illegal charter operations, (2) have intentionally disregarded the Vessel's maintenance, and (3) were threatening to sell or

damage the Vessel. Indeed, the Verified Complaint averred that the Vessel was "subject to imminent removal from the Court's jurisdiction, damage, destruction or other damage," and that "Defendants are actively seeking to illegally sell and liquidate the value of the vessel estimated to be valued over 2.5 million dollars[.]" (Complaint ¶ 12); *see also* (*id.* ¶ 87). But there has been no showing why circumventing judicial review was actually necessary in this case. In fact, Plaintiffs had previously litigated an action against Defendants in state court in connection with the Vessel for nearly a month before bringing this action in federal court.

Moreover, it became apparent at the September 27, 2022 Show Cause Hearing that Plaintiffs' certification of exigent circumstances and references thereto in the Verified Complaint were not accurate. As evidence that Defendants were imminently going to sell the boat, Plaintiffs attached a listing to the Verified Complaint. (ECF No. 1-5).[3] Evidence developed at the hearing reveals that this is *Plaintiffs'* listing for *Plaintiffs'* sale of the Vessel, not Defendants' listing. The evidence that Defendants were imminently going to sell the boat, according to Valdes's testimony on September 27, 2022, was based on screenshots from a local area boat captain WhatsApp group, which have never been provided to the Court; taking Valdes's testimony at face value, he was shown the WhatsApp message on which he relies sometime in July—weeks if not a month before the Emergency Motion was filed. Moreover, Plaintiffs' Response averred that the Vessel was not in compliance with insurance requirements, yet Valdes testified that the Vessel had insurance.

Based on the foregoing, I find that exigent circumstances did not actually exist that made judicial review impracticable. Accordingly, the Warrant of Arrest *In Rem* (ECF No. 17) was improper and I may recommend that it be vacated on this ground alone. *See Ms Adele*, 2010 WL

---

[3] Due to what appears to be a scrivener's error, Plaintiffs may have inadvertently referenced this exhibit in relation to Complaint paragraph 85 instead of Complaint paragraph 87.

8932403, at *2 n.3 (vacating a warrant of arrest issued under Supplemental Rule B(1)(c) for failure to show exigent circumstances, but nonetheless also addressing and finding no probable cause).

### C. Whether There Was Probable Cause for the Arrest of the Vessel

Third, I find that Plaintiff—specifically Nimbus—has failed to set forth a prima facie case. Assuming that this action is functionally brought under Supplemental Rule D, and not brought under Supplemental Rule C as Plaintiffs insist, this action appears to be a maritime possessory or petitory action. In a post-arrest hearing in a petitory or possessory action under Supplemental Rule D, the plaintiff need only establish a prima facie case to demonstrate that the arrest of a vessel should not be vacated. *George*, 2009 WL 3417707, at *1 (quoting *Privilege Yachting Inc., v. Teed*, 849 F. Supp. 298, 301 (D. Del. 1994)).

To that end, the plaintiff must claim a superior right of possession or title to the vessel. *Id.* at *2 ("Plaintiff's verified complaint alleges that he has title of the vessel. For this stage of the proceedings, and as against New Port Cove and ARG Marine, the allegation is enough. Plaintiff must only 'claim[ ] a superior right to possession of a vessel or other maritime property.'") (quoting *Trueman v. The Historic Steamtug New York*, 120 F. Supp. 2d 228, 232 (N.D.N.Y. 2000)). The inquiry focuses on whether the defendant has wrongfully deprived the plaintiff of title to or possession of the vessel. *Id.* ("But, these issues, curious though they may be, are peripheral to the question at hand: has Plaintiff made a prima facie claim that New Port Cove wrongfully deprived him of possession of the vessel?"). Moreover, in a petitory action, it is well-established that the plaintiff must have *legal* title to the vessel to invoke admiralty jurisdiction; equitable title will not do. *See Gulf Coast Shell & Aggregate LP v. Newlin*, 623 F.3d 235, 239 (5th Cir. 2010) ("A petitory action (to try title) under Rule D 'requires [a] plaintiff to assert a legal title to the vessel; mere assertion of an equitable interest is insufficient.'") (alterations in original) (quoting *Silver v. Sloop*

15

*Silver Cloud*, 259 F. Supp. 187, 191 (S.D.N.Y. 1966)).

Of the three named Plaintiffs asserting rightful ownership of the vessel, only Nimbus has in fact held title at some point. The individual Plaintiffs, and Valdes in particular, demonstrated a cavalier attitude towards corporate formalities and though he had no position in either corporation that has held title to the Vessel—Jet Skis or Nimbus—he insisted that it was *his* boat. He supported this claim of ownership, with respect to Nimbus, with his explanation that Nimbus was his girlfriend's company. This quite obviously falls short of showing his legal title to the vessel.

Although I decline to credit Valdes's testimony, I note Valdes did confirm that, when purchased in January 2022, title to the Vessel was placed in the name of Jet Skis—Defendant Garcel's company. At the Show Cause Hearing, Plaintiffs—specifically Valdes—asserted that he has always owned the Vessel. Not so. Plaintiffs characterized Valdes as having an equitable claim to the Vessel, which appears to be based on Valdes orally agreeing to advance Garcel his half of the money to purchase the Vessel, such that Valdes paid the entire purchase price for the Vessel. Plaintiffs' counsel also described Valdes's interest as one of beneficial ownership. However the interest is described, a petitory action premised on an equitable claim to title is not justiciable in admiralty. *See Gulf Coast Shell*, 623 F.3d at 239; *In re Trujillo*, 626 B.R. 59, 73–74 (Bankr. S.D. Fla. 2019) (noting that beneficial ownership interests sound in equity under Florida law).

Further, the evidence Plaintiffs put forward was not sufficient to establish that any of the Plaintiffs—let alone Valdes—had *legal* title to the Vessel when it was purchased at the beginning of 2022. If any of the Plaintiffs had legal title to the Vessel, they did so on May 2, 2022 when a Certificate of Title was issued, after Garcel allegedly, voluntarily transferred title to the Vessel on April 30, 2022. Again, only *Nimbus* had legal title at that point, as it is the entity listed on the

16

May 2, 2022 Certificate of Title.[4] Thus, in construing this action as brought under Supplemental Rule D, to avoid vacatur Nimbus must establish a prima facie case that Garcel wrongfully deprived it of title to the Vessel on July 29, 2022 when Garcel obtained the allegedly fraudulent duplicate Certificate of Title. That Valdes claims Garcel wrongfully caused the state to prosecute him as a means of repossessing the Vessel or in retaliation, in the process admitting to turning over the title voluntarily, is not relevant.

Both Nimbus's May 2, 2022 Certificate of Title and Garcel's retitle issued on July 29, 2022 are prima facie evidence of ownership of the Vessel. *See St. Paul Fire & Marine Ins. Co. v. Vest Transp. Co.*, 666 F.2d 932, 938 (5th Cir. 1982) ("We agree that a ship's documentation of title, while prima facie evidence of ownership, is not conclusive and that true ownership of a vessel is not dependent upon its registry."). Indeed, under Florida law, certificate of title is prima facie evidence of ownership of a vessel. *See* Fla. Stat. § 328.03(4). However, I do not credit the evidence advanced of the circumstances in which Nimbus acquired title to the Vessel. The evidence Nimbus put forward to avoid vacatur is not consistent with the allegations in the Verified Complaint.[5] The Verified Complaint alleges that, after Garcel and Leyva used all influence available to them, they met with Garcel on April 30, 2022.[6] According to the Verified Complaint, Garcel (who already held legal title to the Vessel), demanded a half ownership interest in the Vessel and/or compensation. Garcel and Leyva would not cede, so Garcel voluntarily turned over

---

[4] While Leyva is a shareholder and the president of Nimbus, her testimony was wholly drawn from Valdes's testimony and she nonetheless testified that Valdes owns the Vessel. Indeed, to the extent Valdes's testimony can be credited, his testimony strongly suggested that Leyva is merely a nominee owner of Nimbus. In any event, Nimbus has not actually signed the Verified Complaint—Leyva appears to have signed the Verified Complaint only in her personal capacity. *See* (Complaint at 21).

[5] Notably, the complaint is not verified on behalf of Plaintiff Nimbus; only the individual Plaintiffs verified the complaint.

[6] The Verified Complaint specifies this meeting occurred on April 20, 2022, but Plaintiffs later advance in their Response and through Valdes's testimony that this meeting occurred on April 30, 2022.

the title. Yet at the Show Cause Hearing, Valdes testified that Garcel turned over title to a Vessel that he already legally owned so that Garcel could receive 20 percent of the proceeds of any sale of the Vessel. There is no writing memorializing any of the terms of this agreement, which, if I were to credit Valdes's testimony, at best appears to be some form of oral accord and satisfaction of an oral loan agreement. The Verified Complaint avers that, following this transfer, and also following Valdes's arrest, Leyva was made an officer of Garcel's company, purportedly in connection with Valdes's original agreement with Garcel when the Vessel was first purchased at the beginning of 2022. Frankly, the circumstances under which Nimbus acquired title are perplexing, to say the least, and were presented through testimony of a witness I do not credit. Defendants, for their part, dispute that the transfer of title on May 2, 2022 was voluntary.

Moreover, counsel represented that Plaintiffs would proffer video evidence that Garcel voluntarily signed over the title to Nimbus on April 30, 2022. This proof was exaggerated—it was later clarified that the video in question merely depicted Garcel and his significant other in the elevator of Valdes's condo building.

And further still, Nimbus contends that Garcel wrongfully deprived it of title when Garcel fraudulently obtained a duplicate title on July 29, 2022. I note that a duplicate certificate of title is issued by the Florida Department of Highway Safety and Motor Vehicles "upon application *by the person entitled to hold such a certificate* if the department is satisfied that the original certificate has been lost, destroyed, or mutilated." Fla. Stat. § 328.11(1) (emphasis added). Further, the Parties confirmed at the hearing that title to the Vessel is currently held by Jet Skis. Thus, the Court is left with Jet Skis holding legal title in February 2022 after the Vessel was purchased, a retitling of the Vessel in Nimbus on May 2, 2022 that is not based on credible proof, and title being re-held by Jet Skis. Accordingly, I find that Nimbus has failed to make out a prima

facie case that it was wrongfully deprived of title to the Vessel. To that end, I recommend that the arrest of the Vessel be vacated.

### D. Award of Fees and Costs

Local Admiralty Rule C(7) of the Local Rules of the Southern District of Florida provides that "if the Court orders the arrest to be vacated, the Court shall award attorney's fees, costs, and other expenses incurred by any party as a result of the arrest." S.D. Fla. Local Admiralty C(7). The Local Rule also requires an award of "attorneys' fees, costs and other expenses incurred by any party as a result of the seizure" where, as here, "the seizure was predicated upon a showing of 'exigent circumstances' under Local Admiralty Rule C(2)(b), and the Court finds that such exigent circumstances did not exist." S.D. Fla. Local Admiralty Rule C(7).

Because I recommend that the arrest of the Vessel be vacated for both failure to establish probable cause and because exigent circumstances did not actually exist, I further recommend that Defendants be awarded fees, costs, and other expenses incurred as a result of the arrest.

### IV. RECOMMENDATIONS

For the foregoing reasons, the undersigned **RECOMMENDS** that Defendants' request to vacate the arrest of the F/V *Nirvana* be **GRANTED**, that arrest of the Vessel be **VACATED,** that the Warrant of Arrest *In Rem* (ECF No. 17) be **QUASHED**, and that the Vessel be **RELEASED** to Defendants. The undersigned further **RECOMMENDS** that Plaintiffs be ordered to reimburse Defendants in accordance with Local Admiralty Rule C(7).

A party shall serve and file written objections, if any, to this Report and Recommendations with the Honorable K. Michael Moore, United States District Judge for the Southern District of Florida, on or before **October 17, 2022**. And response thereto shall be filed by no later than **October 21, 2022**. Failure to timely file objections will bar a *de novo* determination by the District

Judge of anything in this recommendation and shall constitute a waiver of a party's "right to challenge on appeal the district court's order based on unobjected-to factual and legal conclusions." 11th Cir. R. 3-1 (2016); 28 U.S.C. § 636(b)(1)(C); *see also Harrigan v. Metro-Dade Police Dep't Station #4*, 977 F.3d 1185, 1191–92 (11th Cir. 2020).

**RESPECTFULLY SUBMITTED** in Chambers at Miami, Florida this 7th day of October, 2022.

_____
LAUREN F. LOUIS
UNITED STATES MAGISTRATE JUDGE

cc:   Honorable K. Michael Moore
      Counsel of Record